IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LIFESCIENCE TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 4:21-cv-01279-SEP |
| | ) |
| v. | ) |
| | ) |
| MERCY HEALTH, et al., | ) |
| | ) |
| Defendants. | ) |

**JOINT MEMORANDUM REGARDING LST'S REFUSAL TO
PRODUCE RELEVANT VERSIONS OF ITS SOFTWARE**

Mercy and LST have the following dispute regarding LST's refusal to produce additional versions of its virtual care software. Pursuant to Local Rule 3.04, the parties conferred in good faith by telephone and email but were unable to reach an agreement.

**Mercy's Position:** Mercy served LST with Request for Production 170 on September 2, 2023, seeking versions of LST's software as it existed at five highly relevant times. LST responded on October 20th stating, "for the reasons explained in its motion to compel production of source code, Dkt. No. 140, the most appropriate way to exchange information regarding the various versions of LST's and Myia's respective virtual patient care platforms is for the parties to exchange source code, and not to produce various 'working copies' of different versions of the software." Mercy's efforts to negotiate a resolution have failed, with LST conditioning its production of any versions on Myia's production of its source code. Of course, not only is Myia's source code irrelevant to the request and dispute, Mercy does not control Myia.

LST, on December 21, 2023, agreed to produce the version of the software as it exists today (reflecting any modifications LST made after receiving, for example, Myia's technical information).

1

Mercy is willing to narrow its request to two versions of the software, namely, as it existed on: (1) March 17, 2015 (before LST began any work with Mercy); and (2) April 1, 2016 (reflecting the software prior to LST's agreement that Mercy owns, *inter alia*, all content and work flow methods developed to be used with LST's services). The software versions are critical to Mercy's ability to fully demonstrate Mercy's property, content, work flows, contributions, and ownership. LST's refusal to produce the highly relevant and material software is designed to, and will, unfairly prejudice Mercy and its ability to defend against LST's allegations. Further, while LST's Chief Technical Officer acknowledges that LST has the ability to produce working copies of the software, in addition to refusing "any" production, LST's counsel suggests that any possible production will be limited to "source code" – which will make it substantially more difficult, and potentially impossible, to assess and demonstrate Mercy's property, content, work flows, and contributions. Working versions are necessary, Mercy never possessed any of LST's source code, and, indeed, the Court previously ordered LST's production of a working version of the software as it existed on August 14, 2023 (not the source code). (ECF 122, p.2).  LST must be compelled to produce working versions of the software, as requested, as they comprise extremely relevant and important evidence.

**LST's Position:**  Mercy's requests for working copies of the March 17, 2015 and April 1, 2016 LST software is likely technically impossible, but in any event unduly burdensome in light of the needs of the case.[1]  This is particularly true given that Mercy should be able to catalog the "content" and "workflows" that it supposedly owns through Mercy's own documentation.

---

[1] The parties never discussed the 2015 version of the software as Mercy confirmed during the meet and confer that it was dropping the requests for all versions of the software except the April 1, 2016 version.  Nonetheless, the burdens associated with attempting to recreate an 2015 operating version of the software are at least as large, if not greater than a 2016 version.

LST's 2015 and 2016 patient-facing application was provided through Apple iPad Tablets running iOS versions that are long out of date. Even if LST could find old iPads running the 2015 and 2016 versions of iOS (by no means a certainty as it would require LST to scour the marketplace for functional, outdated tablets that are not in LST's possession), it is highly unlikely that LST could make the patient-facing application on these tablets functional due to the obsolete iOS. And even if LST could make the patient-facing application functional on the outdated tablets, the outdated iOS means that there is almost zero chance that LST's efforts would result in a system that shows the full functionality of the application as it existed in 2015 or 2016. Similarly, to reproduce the 2015 or 2016 clinician-facing web portal, LST would have to install an entirely new server infrastructure and database backup. And as with the patient-facing application, it is not assured that this huge burden would result in a faithful reproduction of the web portal due to changes in third-party technology. At base, Mercy is asking LST to engage in a costly and burdensome undertaking for a result that, even in the most hopeful scenario, will not result in a true representation of the software as it existed in 2015 or 2016.[2]

The most reliable way to examine old versions of software, especially those as old as the ones requested here, is to review the source code, which allows someone with the appropriate skills and tools to "see" the software as it existed at any point in time. In fact, LST has recently learned that Myia's produced operating software represented to be as of August 2019 contains "cards" for COVID-19—a disease that was not even identified until 2020. It would benefit all parties to exchange source code on an AEO (and direct to expert) basis so that all parties can understand the entire production of both software products.

---

[2] LST's Chief Technology Officer did not "acknowledge that LST has the ability to produce working copies of the software," as Mercy states. When asked about producing a version from 2016, he testified that "[i]f I produce an executable [working] copy of the software . . . you're not going to be able to find an operating system to run it on . . . because Apple doesn't allow that."

Dated: December 22, 2023

**STINSON LLP**

*/s/ Nicci Warr (with permission)*
Scott Eidson, #57757
Nicci Warr, #59975
Julie Scheipeter, #65978
Timothy Krieger, #57823
7700 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Telephone (314) 863-0800
Facsimile (314) 863-9388
scott.eidson@stinson.com
nicci.warr@stinson.com
julie.scheipeter@stinson.com
timothy.krieger@stinson.com

Jeffrey J. Goulder (*pro hac vice*)
1850 N. Central Ave., Suite 2100
Phoenix, AZ 85004
Telephone (602) 279-1600
Facsimile (602) 240-6925
jeffrey.goulder@stinson.com

Judith Araujo (*pro hac vice*)
1050 17th St., Suite 2400
Denver, CO 80265
Telephone (720) 728-7650
Facsimile (720) 728-7649
judith.araujo@stinson.com

***Attorneys for Plaintiff LifeScience Technologies, LLC***

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/ Nick E. Williamson*
David A. Roodman, # 38109 MO
Mark S. Deiermann, # 31521 MO
Jason Meyer, # 64030 MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
daroodman@bclplaw.com
msdeiermann@bclplaw.com
jason.meyer@bclplaw.com

***Attorneys for Mercy Health and Mercy ACO Clinical Services***