**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LIFESCIENCE TECHNOLOGIES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:21-cv-01279-SEP |
| | ) | |
| MERCY HEALTH, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiff LST's Motion to Compel Production of ESI from Two Additional Custodians, Doc. [216], Defendant Mercy's Motion to Strike and Exclude LST's Belatedly-Identified Proposed Witnesses, Doc. [251], and Mercy's Motion to Deem Plaintiff LST's Responses to Requests for Admission as Admitted, Doc. [290]. For the reasons set forth below, Plaintiff's motion is granted and Defendant's motions are denied.

**BACKGROUND**

This trade secret misappropriation case arises out of a dispute between LST and Defendants Mercy and Myia. LST is a software development company that develops and delivers virtual patient care solutions. Doc. [1] ¶ 19. One of LST's virtual care platforms is m.Care, which connects hospital-based teams with home-based patients. *Id*. ¶¶ 19, 22. In 2015, Mercy asked LST to further develop its m.Care platform for use in Mercy's patient population. *Id*. ¶ 30. Sometime in 2018, while Mercy was still using LST's m.Care platform, Mercy announced that it was bringing Defendant Myia aboard to co-develop a virtual patient care platform for Mercy's use. *Id*. ¶ 57. When Myia began working with Mercy, it did not have its own virtual care platform. *Id*. ¶ 59. Plaintiff alleges that Mercy improperly allowed Myia employees to access the m.Care platform in order to examine, reverse engineer, and use LST's trade secrets and intellectual property to develop Myia's software platform. *Id*. ¶¶ 60-77, 81. When Myia's software was functionally capable of replacing the m.Care software, Mercy stopped using m.Care and began using Myia's virtual care platform instead. *Id*. ¶ 86.

Discovery in this matter has given rise to numerous disputes, which the Court has heard at informal discovery conferences. These motions follow. Additional information about each dispute will be set forth as necessary below.

1

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) sets the scope for discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

A party is not necessarily entitled to all discovery that is relevant, and courts may limit discovery "if the burden or expense of the proposed discovery outweighs its likely benefit," if it "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," and when "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). A party resisting discovery of relevant information bears the burden of showing why such information should not be produced. *See Jo Ann Howard & Assoc., P.C. v. Cassity*, 2013 WL 5335820, at *3 (E.D. Mo. Sept. 23, 2013).

Under Rule 26(e) of the Federal Rules of Civil Procedure, a party who has disclosed information under Rule 26(a) or responded to an interrogatory, request for production or request for admission "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process of in writing." Fed. R. Civ. P. 26(e). Whether a party has a duty to supplement is "committed to the sound discretion" of the court. *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). One purpose of discovery is to prevent unfair surprise, and "Rule 37's enforcement mechanism helps accomplish this purpose." *Certain Underwriters at Lloyd's v. SSDD, LLC*, 301 F.R.D. 391, 393 (E.D. Mo. 2014) (citing *Doe v. Young*, 664 F.3d 727, 734 (8th Cir. 2011) (internal quotation marks omitted). However, "Rule 37 does not provide for mandatory sanctions," and a district court may find that the failure to provide information was "substantially justified or harmless." *Radha Giesmann, MD, P.C. v. Am. Homepatient, Inc.*, 2017 WL

2709734, at *2 (E.D. Mo. June 22, 2017) (quoting *Davis v. U.S. Bancorp, 383 F.3d 761*, 765 (8th Cir. 2004)).  The offending party has the burden to show the failure to disclose the witness was "substantially justified or harmless."  *Id*. (citation omitted).

The district court considers the following four factors in determining whether a Rule 26 violation is justified or harmless, including:  "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Rodrick v. Wal-Mart Stores East, L.P.*, 666 F.3d 1093, 1097-98 (8th Cir. 2012) (citation omitted).  "[T]he Court need not make explicit findings concerning the existence of a substantial justification or the harmlessness."  *Id*. at 1097 (citation omitted).  Indeed, the Court has "wide discretion to fashion a remedy or sanction appropriate for the particular circumstances of the case.  *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008).  The Eighth Circuit has warned that "the exclusion of evidence is a harsh penalty and should be used sparingly."  *ELCA Enters v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995).

Rule 36 states in part that:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: facts, the application of law to fact, or opinions about either; and the genuineness of any described documents . . .. A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

Fed. R. Civ. P. 36(a).  Rule 36 expressly provides that parties may agree to modify the 30-day period for responding.  *See* Fed. R. Civ. P. 36(a)(3).  Fed. R. Civ. P. 36(b) provides that "the Court may permit withdrawal or amendment [of an admission] if it would promote the presentation of the merits of the action and if the Court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36(b).

"Requests for admissions should be simple and direct, as parties are not required to admit or deny requests that consist of vague or ambiguous statements."  *Margulis v. Euro-Pro Operating, LLC*, 2013 WL 5442702, at *3 (E.D. Mo. Sept. 30, 2013).  While requests for admission may properly pertain to "the application of law to fact," pure legal conclusions, or the truth of legal conclusions, are outside the scope of requests for admission.  *See Aventure Communications Technology, L.L.C. v. MCI Communications Services, Inc.,* 2008 WL 4280371

3

at *1 (N.D. Ia. 2008).  Requests for admission "are intended to establish the admission of facts about which there is no real dispute." *Stockdale v. Stockdale,* 2009 WL 5217001 at *2 (E.D.Mo.2009); *see also* 8B, Wright, Miller & Marcus, Federal Practice and Procedure, § 2253 at 324.  "[T]he purpose of a request for admission is . . . . to facilitate resolution on the merits by narrowing the issues at trial where the parties unambiguously agree . . . .").  "It is not proper to ask a plaintiff to ratify the legal conclusions that the Defendants have attached to the operative facts of the case, as requests for admission are not to be employed as a means to establish facts which are obviously in dispute or to answer questions of law.  A request for admission that involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered to be inappropriate." *Lakehead Pipe Line Co. v. Am. Home Assur. Co.,* 177 F.R.D. 454, 458 (D. Minn. 1997).

## DISCUSSION

### I.    LST's motion to compel production of ESI is granted.

LST seeks an order compelling Myia to produce, at its expense, ESI for two additional custodians, Bill Abeln and Tara Parsons.  Doc. [217] at 1.  Abeln was a Customer Success Manager and Parsons was a Technical Support Specialist for Myia, and LST asserts that both of them were involved in Myia's development of its virtual patient care system.  *Id.*  Parsons is also a former Mercy employee who used LST's patient care platform during her tenure there.  *Id.*  Myia did not identify these individuals in response to an LST interrogatory asking for the names of individuals who played a role in development of Myia's virtual care product, so LST did not initially request their inclusion as ESI custodians.  *Id.* at 1-2.  Of the seven people LST did select as custodians, Myia deleted the email records of four of them.  *Id.* at 2.  Because of the inability to access the emails for four named custodians, LST asserts that it is unlikely that all relevant ESI for Abeln and Parsons has been captured in the ESI already produced by Myia through other custodians.  *Id.*

The parties' dispute concerning production of ESI for these custodians was the subject of a discovery conference held on November 20, 2023.  At that conference, the undersigned informed the parties that, based on the arguments presented, if LST were to file a motion to compel ESI production for these two individuals, it would likely be granted, unless Myia provided more compelling arguments against such production than had thus far been made.  Doc. [215] at 69-70.  After review of the parties' briefs, the Court's initial conclusion is unchanged.

Myia merely reiterates the same arguments made at the November conference, including its assertions that producing ESI from Abeln and Parsons is not warranted because they "were in no way involved in the development of Myia's software," Doc. [241] at 1; that ESI from Abeln and Parsons would be duplicative and cumulative because any relevant documents would already have been captured in the ESI produced from other Myia custodians, *id*. at 6; and that LST should bear the costs associated with production of any additional discovery the Court compels Myia to produce, because the information sought is both unimportant and cumulative, *id*. at 8-9.

It appears to the Court that (a) Abeln and Parsons were involved in the development of Myia's platform, (b) information gleaned from adding them as custodians would be neither cumulative nor duplicative and (c) such discovery is proportional to the needs of the case.  LST points to multiple communications produced through other Myia custodians that show Abeln's and Parsons's involvement.  Just a few examples:  Abeln, in messages exchanged with the Myia team, noted Mercy's "request was 'make it look like LST for now'"; in another message he wrote that Mercy "asked for that a number of times.  One of my least favorite 'well in LST we could . . .'"; in another message he noted that "our goal is to have parity/exceed LST"; and on a Myia message chain titled "design collaboration," Abeln noted that he shared a document with the Myia team 'that encompassed some suggestions/ideas from the [Mercy] team via [his] shadowing" that would enhance the Myia platform; and when an individual on Myia's team indicated they had never seen "the LST table before," Abeln responded that he has "a bunch of screen shots and videos" of the platform that he could share.  Doc. [217] at 4-5.  Additionally, during Mercy's 30(b)(6) deposition, there was testimony that Abeln "worked as a liaison between the clinical team [at Mercy] at the Myia development team."  *Id*. at 5.  As for Parsons, before she was hired by Myia, she worked at Mercy, where she participated in meetings with Myia representatives "to discuss the LST screens and what is important and what is not."  *Id*. at 6.  After joining Myia, she accessed LST's platform, taking video recordings that she shared with others on the Myia development team.  *Id*.

Though the full extent of Abeln's and Parsons's involvement with the Myia software development team is unclear, LST has provided sufficient information to belie Myia's claim that they "were *in no way involved* in the development of Myia's software."  Doc. [241] at 1 (emphasis added).  And, as Myia acknowledged at the discovery conference, it is undisputed that Abeln and Parsons accessed the LST platform and took screen shots and exchanged messages

5

with Myia team members regarding the software. *See* Doc. [215] at 65-66. As for Myia's argument that it would be unduly burdensome to produce the requested ESI because similar information has likely already been provided under other custodians, making this ESI cumulative or duplicative: As the undersigned noted at the discovery conference, because Myia deleted the accounts of four custodians with whom Abeln and Parsons may have communicated, any emails Abeln and Parsons exchanged with those individuals would not yet have been produced. *Id*. at 66-67. As the requested discovery is relevant to LST's claims and is unlikely to be cumulative or duplicative, LST's motion to compel is granted.

The Court will not shift the costs of this discovery to LST. "Typically, a party must pay its own costs to respond to discovery." *No Spill, LLC v. Scepter Canada, Inc*., 2021 WL 4860556, at *9 (D. Kan. Oct. 19, 2021). "Costs for producing documents are generally shifted only when an undue burden or expense is imposed on the responding party, taking into account the needs of the case, the amount in controversy, the parties; resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *McClurg v. Mallinckrodt, Inc*., 2016 WL 7178745, at *3 (E.D. Mo. Dec. 9, 2016) (internal quotation omitted). The party seeking cost-shifting has the burden to show there is good cause to shift expenses by making "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Lawson v. Spirit AeroSystems, Inc*., 2020 WL 3288058, at *10 (D. Kan. June 18, 2020). Here, Myia has made only conclusory assertions that it will suffer undue burden in producing what it characterizes as unimportant additional ESI; it provides no sufficiently "particular and specific" reasons supporting those assertions. Thus, Myia has failed to rebut the presumption imposed by the Federal Rules that each party should bear its own cost of discovery. Myia is fortunate to not be ordered to pay LST's reasonable expenses in bringing this motion, considering that the Court made its position on this dispute clear at the November 2023 conference, yet Myia nonetheless forced LST to move to compel and did not provide any novel or more convincing argument in opposition to the motion.

## II.    Mercy's motion to strike and exclude LST's witnesses is denied.

On November 13, 2023, LST served its Amended Initial Disclosures, in which it disclosed 15 witnesses that were not included in its Initial Disclosures. Close of discovery in this matter was on December 8, 2023. *See* Doc. [213]. On December 20, 2023, Mercy advised LST

6

that it objected to the amended disclosures.  *See* Doc. [276-1] at 6.  Mercy now moves to sanction LST pursuant to Rule 37 for violating its obligation to timely supplement its disclosures by striking nine of the witnesses and precluding LST from introducing or relying on testimony from the same.  *See* Doc. [251] at 2.  The nine witnesses are (1) 1904 Labs; (2) Sean J. Walsh; (3) Jack Bader; (4) Andrew Ulrich; (5) Alejandro Ramirez; (6) Hugues Belanger; (7) Karolina Michniewcz; (8) Max Claypool; and (9) Piper Sandler.[1]  Mercy argues that the witnesses were not timely disclosed, and it would be unfairly prejudicial to allow LST to use any of the nine.  Doc. [252] at 3.  Mercy asserts that LST's "egregiously late disclosure" prevented its ability to perform discovery related to the new witnesses, including deposing them, and precluded the assessment and development of defenses related to the witnesses.  *Id*. at 2-3.  LST responds that its amended disclosures were timely because it did not realize the import of the nine witnesses until shortly before amending, and the amendment was served 25 days before the discovery deadline.  *See* Doc. [276-1] at 10-11.  LST also argues that even if the disclosures are determined not timely, any failure to timely supplement was substantially justified and harmless.  *Id*. at 8. The Court agrees with LST that the supplement was timely and will not exclude the witnesses.

Some background regarding the witnesses is necessary to understand the question before the Court.  1904 Labs is a technology consulting firm hired by Mercy in February 2019 to develop custom software.  *Id*. at 2.  LST asserts that at that time it was under the impression that 1904 Labs was working on a dashboard for Mercy that would display patient data captured on multiple systems, including m.Care, and that the 1904 Labs product was complementary to m.Care, rather than contributing to the development of a replacement for m.Care.  *Id*.  LST explains that it was not until May 2023 during the deposition of former Mercy employee, Mark Saxon, that it became aware that the software 1904 Labs was engaged to build was related to the replacement of m.Care.  *Id*. at 3.  LST states that it then attempted to obtain more information about 1904 Lab's involvement during the depositions of multiple Mercy witnesses in the summer of 2023 but found they had no information to offer on the subject.  *Id*.  LST then served a subpoena on 1904 Labs in September of 2023, and between October 19 and October 24, 2023, 1904 Labs produced a total of 11,035 responsive documents, which LST then reviewed.  *Id*. at 4. After reviewing the information, LST concluded that 1904 Labs had likely been improperly granted access to m.Care while designing its product, and in light of this, LST selected certain

---

[1] The individual witnesses are associated with 1904 Labs.

current and former 1904 Labs employees that it may call at trial.  *Id*.  LST identified the 1904 Labs witnesses on November 13, 2023, less than three weeks after receiving the full document production from 1904 Labs.  *Id*.

As for Piper Sandler, on August 11, 2023, Mercy's CFO testified that Mercy used a third party to perform a valuation of its recently developed vEngagement software in connection with Mercy's desire to commercialize the product.  *See* [276-6].  He stated that Mercy would not have deleted the valuation, and he would look for it on Mercy's system.  *Id*.  LST later requested that Mercy produce such valuation, and in September 2023, Mercy informed LST that it was not able to locate it.  Doc. [276-1] at 5.  Because Mercy could not provide the requested information, LST subpoenaed Mercy's two financial services firms, Piper Sandler and Grant Thornton.  *Id*.  On November 9, 2023, counsel for Piper Sandler confirmed that it had responsive documents and would collect and produce the same.  *Id*.  Because of this representation, LST added Piper Sandler to its amended disclosures, which were served on Mercy only 4 days after LST learned that Piper Sandler had relevant information.  *Id*.

The discovery deadline in this case was December 8, 2023.  *See* Doc. [213].  Trial is scheduled to begin on April 7, 2025.  LST identified the nine disputed witnesses in November 2023, mere weeks (or in the case of Piper Sandler, days) after becoming aware of their import to its claims.  This was within the discovery period and almost a year and a half before trial.  Rule 26(e) requires that supplementation be made in a "timely manner."  "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches."  Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment.  "What 'timely' means in a given case depends on a variety of case-specific factors, including when the disclosing party became aware of the information."  *Trekell v. Target Corp*., 2019 WL 6868963, at *4 (W.D. Mo. Dec. 16, 2019).  *See also Fair Isaac Corp. v. Fed. Ins. Co*., 337 F.R.D. 413, 419 (D. Minn. 2021) ("In the context of [Rule 26], however, timeliness is not measured by a particular date or event; rather, timeliness means without undue delay upon discovering the information that is to be provided.").  The Court finds that LST's supplementation was timely under the circumstances presented.

Mercy could have taken discovery related to 1904 Labs or Piper Sandler prior to the close of discovery, but it appears not to have had any real interest in doing so, which is perhaps

unsurprising considering that all the new witnesses were associates of Mercy (1904 Labs as its technology vendor, and Piper Sandler as its financial services firm), and Mercy was aware of their relevance to the case.  And if Mercy wished to depose the witnesses but did not believe it had time to do so prior to the close of discovery, it could have moved the Court for an extension of time to take depositions or perform other discovery, and the Court would have allowed it, but no such motion was made.  Mercy also could have asked LST for an out-of-time deposition, but at the meet and confer on this topic in late December 2023, LST asserts that Mercy "expressed no interest in taking additional discovery related to these witnesses and sought only LST's agreement to strike the witnesses from its Rule 26(a) disclosures."  Doc. [271-1] at 2.  Under the circumstances, it is easy to understand why LST believes Mercy is less concerned about unfair surprise or adequate disclosure and more concerned with keeping relevant information out of trial, which is not the purpose of Rule 37.  *Id*.; *see also Certain Underwriters at Lloyd's,* 301 F.R.D. at 393 ("One purpose of discovery is to prevent unfair surprise, and Rule 37's enforcement mechanism helps accomplish this purpose.").  Mercy's motion to sanction LST by excluding the nine disputed witnesses is denied.

## III.    Mercy's motion to deem LST's responses to RFAs as admitted is denied.

On September 2, 2023, Mercy served on LST 228 requests for admission (RFAs).  Doc. [307] at 2.  Due to the large number of RFAs, LST requested an extension of the 30-day period for responding afforded under Rule 36.  Mercy agreed to extend the deadline until October 20, 2023, and LST served its responses on that date.  *Id*.  Two months later, on December 20, 2023, Mercy, for the first time, raised numerous issues with LST's responses to 52 of the RFAs and requested an immediate meet and confer.  *Id*.  The parties met on Friday, December 22, 2023, and LST explained that it disagreed with Mercy's objections, but agreed to supplement its responses to the RFAs identified by Mercy.  *Id*. at 3.  LST initially agreed that it would try to supplement by around January 9, 2024, but later, upon realizing it would not meet that deadline, told Mercy that it expected to supplement by January 16, 2024.  *Id*. at 4.  On January 19, 2024, Mercy asked LST to confirm that it would provide supplemental responses by January 22, 2024, and Mercy filed the instant motion on February 1, 2024, asserting that LST had failed to timely supplement as promised, and asking the Court to sanction LST by deeming the disputed RFAs admitted.  LST served supplemental responses on February 25, 2024.  *See* Doc. [291].

In the Eighth Circuit, late responses to RFAs "are treated as the functional equivalent" of a motion to withdraw admissions under Rule 36(b) and for an extension of time to respond.[2] *Pitts v. City of Cuba*, 2012 WL 3765086, at *3 (E.D. Mo. Aug. 30, 2012). *See also* Fed. R. Civ. P. 36(a)(3), 36(a)(6) (noting the court's discretion to lengthen time for responding and to order an amended answer to be served on finding noncompliance). The Court therefore treats LST's supplemental response as such a motion.

The Eastern District of Missouri applies a two-part test to determine if a plaintiff's motion to withdraw an admission and extend the time to respond should be granted. *Clines v. Special Admin. Bd. Transitional Sch. Dist. of City of Saint Louis*, 2019 WL 398352, at *1-2 (E.D. Mo. Jan. 31, 2019); *Pitts*, 2012 WL 3765086, at *3. The first prong "directs the court to analyze whether permitting withdrawal of the admissions would promote the moving party's ability to have the case heard on the merits." *Clines*, 2019 WL 398352, at *1 ("[W]hen a material fact is contested, considering the fact to be admitted precludes, rather than promotes, presentation of the case on the merits."). Likewise, "[i]f the admissions would prevent Plaintiffs from having their claims considered, allowing withdrawal promotes the presentation on the merits." *Pitts*, 2012 WL 3765086, at *3. The second prong "requires a showing of prejudice to the nonmoving party, and that party bears the burden" of proving it would be prejudiced if the Court allowed a late admission. *Clines*, 2019 WL 398352, at *2. "The prejudice contemplated by Rule 36(b) relates to the difficulty a party may face in proving its case because of a sudden need to obtain evidence required to prove the matter that had not been admitted." *Id*. at *2.

The first prong is satisfied here. Defendant's disputed RFAs "seek less to establish factual predicates for trial and more to dismantle Plaintiff's claims." *Pitts*, 2012 WL 3765086, at *3. The Court agrees with Plaintiff that the RFAs at issue inappropriately go to the heart of the factual and legal disputes between the parties, including: (1) whether the SaaS agreement between Mercy and LST permitted third-parties to use LST's platform (RFA Nos. 3, 54, 129, 153); how the SaaS between Mercy and LST assigned ownership and allowed use of various items (RFAs Nos. 60, 72, 87, 98, 140, 144, 173); and (3) and how the PMSA between Mercy and

---

[2] The Court recognizes that if LST's initial responses to the RFAs were sufficient, as LST argues in the alternative, then there was never any obligation to supplement, and the timeliness of the supplementation is of no consequence. Because the Court finds it appropriate to treat the purportedly late supplementation as a withdrawal of any admissions and concludes that Defendant is not prejudiced by allowing the supplementation, it declines to delve into the adequacy of LST's disputed initial responses.

LST and the Master SOW under that agreement assigned ownership of various items between Mercy and LST (RFAs Nos. 19, 30, 35, 41, 79, 121, 212). *See Lakehead Pipe Line Co.,* 177 F.R.D. at 458 ("[R]equests for admission are not to be employed as a means to establish facts which are obviously in dispute or to answer questions of law. A request for admission that involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered to be inappropriate."). Because the RFAs at issue are not merely seeking "factual predicates for trial" but go to the heart of the factual and legal disputes between the parties, the first prong of the two-part test is satisfied. *See Pitts*, 2012 WL 3765086, at *3.

The second prong is also satisfied, as Mercy has not met its burden to show prejudice. In evaluating the second prong, a Court asks "whether Defendants could reasonably have believed that Plaintiffs intended to admit facts which were so vital that they amounted to a complete waiver of Defendants' liability." *Pitts*, 2012 WL 3765086, at *3. The RFAs at issue here request admission of items that no reasonable party could believe another party would admit, including requests for legal admissions and admissions that go to the heart of disputed facts. For example, Mercy asked LST to admit that: "LST breached the terms of the PMSA when it engaged Mark Saxon as a consultant, subcontractor, and/or advisor" (RFA No. 105); "LST breached the terms of the PMSA when it engaged Dr. Tom Hale as a consultant, subcontractor, and/or advisor" (RFA No. 202); "LST breached the terms of the PMSA when it engaged Vance Moore as a consultant, subcontractor, and/or advisor" (RFA No. 205); and "LST is not aware of any of its alleged trade secrets having been used by Myia" (RFA No. 134). Although Mercy claims "material prejudice" and argues that the lack of supplemental responses "materially impacted expert witness depositions," Doc. [291] at 3, Mercy does not explain how any of the 52 RFAs bear on expert opinions or how such supplemental responses would have been used during expert depositions. *See Bryant v. Laiko Int'l Co.*, 2006 WL 2788520, at *5 (E.D. Mo. Sept. 26, 2006) (granting motion to withdraw admission because "Defendant provides little support for his contention" of prejudice and thus "has not met its burden of proving prejudice"). Because both prongs of the test to allow late responses are satisfied, LST is allowed to supplement its responses. And as the supplement was served on Mercy after it filed the instant motion, the supplementation renders Mercy's motion moot.

Accordingly,

11

**IT IS HEREBY ORDERED** that LST's Motion to Compel Production of ESI from Two Additional Custodians, Doc. [216], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Mercy's Motion to Strike and Exclude LST's Belatedly-Identified Proposed Witnesses, Doc. [251], is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant Mercy's Motion to Deem Plaintiff LST's Responses to Requests for Admission as Admitted, Doc. [290], is **DENIED** as moot.

Dated this 30th day of September, 2024.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE