UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LIFESCIENCE TECHNOLOGIES, LLC | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-cv-01279-SEP |
| | ) |
| MERCY HEALTH, et al, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff LST's Motion for Sanctions against Myia Labs, Inc., Doc. [237].  For the reasons set forth below, Plaintiff's motion is denied.

### BACKGROUND

This trade secret misappropriation case arises out of a dispute between LST and Defendants Mercy and Myia.  LST is a software development company that develops and delivers virtual patient care solutions.  Doc. [1] ¶ 19.  One of LST's virtual care platforms is m.Care, which connects hospital-based teams with home-based patients.  *Id*. ¶¶ 19, 22.  In 2015, Mercy asked LST to further develop its m.Care platform for use in Mercy's patient population.  *Id*. ¶ 30.  Sometime in 2018, while Mercy was still using m.Care, Mercy announced that it was bringing Defendant Myia aboard to co-develop a virtual patient care platform for Mercy's use.  *Id*. ¶ 57.  Plaintiff alleges that Mercy improperly allowed Myia employees to access the m.Care platform in order to examine, reverse engineer, and use LST's trade secrets and intellectual property to develop Myia's software platform.  *Id*. ¶¶ 60-77, 81.  When Myia's software was functionally capable of replacing the m.Care software, Mercy stopped using m.Care and began using Myia's virtual care platform instead.  *Id*. ¶ 86.

The current sanction motion arises from LST's allegations of spoliation of electronically stored information (ESI).  On March 2, 2021, LST sent a litigation hold letter to Myia, outlining its allegations against Myia and asking that Myia preserve evidence related to Myia's alleged improper access of LST's m.Care platform.  Doc. [239-1] at 1; Doc. [278-7] at 3 ("As a result of the facts and possible causes of action detailed below, LST asks that Mercy and Myia immediately put a litigation hold in place and preserve all evidence (regardless of format, media, or application) related to the matters detailed in this letter . . .").  The letter explicitly alleged

1

that Tammy Chang, then Lead Product Developer at Myia, had "improperly accessed LST's system." Doc. [278-7] at 3. Chang left Myia on August 13, 2021, and Myia deleted Chang's work email and wiped her company laptop[1] on October 22, 2021, prior to the filing of this lawsuit. *See* Doc. [278] at 5. LST argues that, while it "will never know the full extent and substance of Ms. Chang's ESI that was destroyed . . . there can be little doubt that Ms. Chang had relevant ESI that would have been responsive to LST's discovery . . . ." Doc. [239-1] at 1.

Myia argues that it "had no duty to preserve Tammy Chang's ESI because litigation was not reasonably foreseeable on October 22, 2021," when the data deletion occurred. Doc. [278] at 7. It says that it responded to LST's letter on March 17, 2021, via a letter drafted by Myia's attorneys at DLA Piper, explaining why it believed LST's allegations were without merit. Docs. [278] at 4; [278-8]. On April 9, 2021, Myia offered to have a third-party expert perform a code comparison of Myia's and LST's platforms. *Id*. Myia asserts that this offer was followed by over "six months of silence" from LST. *Id*. at 5. During the six-month period, Mercy initially informed Myia that their relationship would "be stalled until the issue with LST had resolved," but over the summer Mercy resumed its relationship with Myia, allegedly causing Myia to believe that "Mercy and LST had reached (or were nearing) an amicable resolution." *Id*. at 5; *see also* Doc. [278-11] (declaration of Myia CEO Simon MacGibbon attesting to the same). Myia maintains that the lawsuit came "[o]ut of the blue," and that it was "shocked" to learn it was being sued by LST. *Id*. at 1, 6.

As for the destruction of Chang's ESI, Myia argues that when the deletion occurred, it was a "young start up" without any "sophisticated document retention policy that set out a clear process regarding the deletion of materials from separated employees." *Id*. at 5. Rather, Myia maintains, it was generally understood that email and other information would "typically" be retained for 90 days before being deleted. *Id* at 5-6. Myia also asserts that when its Director of Information Security, Tim Sanders, deleted Chang's work email and wiped her company laptop (70 days after her departure), he had not been informed of any threat of litigation by LST. *Id*. MacGibbon testified at his deposition that he did not know why Sanders did not wait the full 90

---

[1] Myia did not delete Chang's Slack communications, her Dropbox account, or her Figma files. "Slack was the primary method by which Myia employees communicated; Ms. Chang's Dropbox account contained her design research work product; and Figma contained her Design UX (i.e., visual User Experience / User Interface) work product." Doc. [278-11] (Declaration of Myia CEO MacGibbon).

2

days before deleting Chang's account, but that he "expect[ed] that [Sanders] asked the question, do we need to still keep this active," as it was "approaching 90 days." Doc. [278-2].

LST now moves the Court to sanction Myia pursuant to Federal Rule of Civil Procedure 37(e)(2) by issuing an adverse inference instruction to the jury that any evidence no longer available would have been favorable to LST's claims. *See* Doc. [237] at 1.

## LEGAL STANDARD

"A party is obligated to preserve evidence once the party knows or should know that the evidence is relevant to future or current litigation." *Rao v. St. Jude Med. S.C., Inc.*, 631 F. Supp. 3d 678, 711 (D. Minn. 2022) (citing *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 232 (D. Minn. 2019) (citations omitted)). "The duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence," and is based on an objective standard. *Id*. Thus, the duty arises when "a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). Once an obligation to preserve arises, however, it "does not continue indefinitely" and lasts only as long as litigation is reasonably anticipated. *Pro Mktg. Sales, Inc. v. Secturion Sys., Inc.,* 2022 WL 20335556, at *2 (D. Utah Aug. 30, 2022). "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Micron Tech.*, 645 F.3d at 1320 (citing *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001)).

Spoliation of ESI is governed by Rule 37 of the Federal Rules of Civil Procedure, which provides:

> (e) Failure to Preserve Electronically Stored Information.  If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or

3

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Under Rule 37(e)(1), a court may award sanctions only if:  (1) the information at issue should have been preserved in the anticipation or conduct of litigation; (2) a party failed to take reasonable steps to preserve the information; (3) information was lost as a result and the information cannot be restored or replaced by additional discovery; and (4) "upon finding prejudice to another party from loss of the information." Fed. R. Civ. P. 37(e)(1) advisory committee's notes to 2015 amendment.

As for Rule 37(e)(2), which is at issue here, it "does not include a requirement that the court find prejudice to the party deprived of the information" to impose a sanction of an adverse inference or default judgment. *See* Fed. R. Civ. P. 37(e)(2) advisory committee's notes to 2015 amendment.  "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Fed. R. Civ. P. 37(e)(2) advisory committee's notes to 2015 amendment.

"This finding may be made by the court when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial." *Id.* Importantly, "[n]egligent or even grossly negligent behavior does not logically support that inference." *Id.*; *see also EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 2018 WL 1542040, at *18 (M.D. Tenn. Mar. 29, 2018) ("Rule 37(e)(2)'s drafters included its intent standard with a specific purpose:  to reject cases that had authorized an adverse-inference instruction 'on a finding of negligence or gross negligence.'"). According to the Eighth Circuit, "because deciding a case based on hypothesized evidence is strong medicine, Federal Rule of Civil Procedure 37(e)(2)(A) expressly states that an adverse presumption requires a finding that electronically stored information was lost because one party 'acted with the intent to deprive another party of the information's use in the litigation.'" *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018) (citation omitted).

"[B]ecause intent is 'rarely [ ] proved by direct evidence,' a court imposing spoliation sanctions 'has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witness in a particular case, and other factors.'"

4

*Kelley as Tr. of BMO Litig. Tr. v. BMO Harris Bank N.A.*, 657 B.R. 475, 485 (D. Minn. 2022) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 901 (8th Cir. 2004)).  The intent to deprive—sometimes referred to as bad faith—"can be proved indirectly," and a party need not "find a smoking gun" before seeking sanctions under this section.  *Auer*, 896 F.3d at 858.  "[A] party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer that [the] party purposefully destroyed evidence to avoid its litigation obligations." *Est. of Hill by & through Grube v. NaphCare, Inc.*, 2022 WL 1464830, at *11 (E.D. Wash. May 9, 2022) (citation omitted).  "The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to suppress the truth," and not simply that the parties were aware of the prospect of litigation.  *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007).

In sum, an adverse inference instruction is an "extreme" sanction that "should not be given lightly."  *Rao v. St. Jude Med. S.C., Inc.*, 631 F. Supp. 3d 678, 712 (D. Minn. 2022).  *See also Morris v. Union Pacific R.R.*, 373 F.3d 896, 900 (8th Cir. 2004) ("An adverse inference instruction is a powerful tool in a jury trial.  When giving such an instruction, a federal judge brands one party as a bad actor, guilty of destroying evidence that it should have retained for use by the jury.").  "In practice, an adverse inference instruction often ends litigation—it is too difficult a hurdle for the spoliator to overcome."  *Id.*  Indeed, the advisory committee's notes to the 2015 amendment to Rule 37(e)(2) state:  "Courts should exercise caution, however, in using the measures specified in (e)(2)," and "[f]inding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision (e)(2)."

## DISCUSSION

LST alleges spoliation of evidence.  "Spoliation of evidence is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' " *E*Trade Securities LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 587 (D. Minn. 2005) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999)).  The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation.  *See Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 746 (8th Cir. 2004).  If destruction of relevant information occurs before any litigation has begun, in order to justify sanctions, the requesting party must

5

show that the destruction was the result of bad faith and done with the intent to deprive the other party of the information.[2] *Id.* As explained above, behavior that is "negligent or even grossly negligent" does not support the inference that the destruction was intentional. *See* Fed. R. Civ. P. 37(e)(2) advisory committee's notes to 2015 amendment; *see also Stevenson*, 354 F.3d at 749 (noting that the Eighth Circuit has "never approved of giving an adverse inference instruction on the basis of negligence alone").

Myia argues that it was under no obligation to preserve the ESI at issue, due mainly to the delay between when it received the litigation hold letter and the date on which the data was destroyed. Once an obligation to preserve evidence arises, such obligation "does not continue indefinitely," and there is no bright-line rule regarding how long the duty may continue. *Pro Mktg. Sales, Inc. v. Securion Sys., Inc.,* 2022 WL 20335556, at *2 (D. Utah Aug. 30, 2022); (citing *Pirrello v. Gateway Marina*, 2011 WL 4592689, at *5 (E.D.N.Y. Sept. 30, 2011).

Here, an obligation to preserve relevant ESI inarguably arose in March 2021 when the litigation hold letter was received by Myia, but Myia denies that it remained in effect roughly seven months later, when the ESI was destroyed. The Court need not resolve that question because, even if Myia still had a duty to preserve Chang's ESI on her laptop and in her email account on the day the data was wiped, LST has not persuaded the Court that the harsh sanction of an adverse inference instruction pursuant to Rule 37(e)(2) is warranted. While Myia's procedures (or lack thereof) surrounding the preservation of the ESI at issue might have been negligent, even grossly so, that is not sufficient to justify the extreme sanction requested. *See* Fed. R. Civ. P. 37(e)(2) advisory committee's notes to 2015 amendment; *see also Rao*, 631 F. Supp. 3d at 712 ("Mere negligence, a finding that a party knew or should have known not to destroy relevant evidence, is not enough."). LST has not shown that Myia deleted Chang's ESI on October 22, 2021, with "fraudulent intent and a desire to suppress the truth." *Menz*, 440 F.3d

---

[2] LST argues that a showing of bad faith is not required, Doc. [239-1] at 7, but that argument runs contrary to Eighth Circuit case law. A district court does not abuse its discretion by imposing sanctions absent a finding of bad faith when a party destroys evidence "*after* litigation has commenced, *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010), but if ESI was deleted *prior* to the initiation of litigation, the party requesting sanctions "must show that the destruction was the result of bad faith," *Gordon v. Almanza*, 2018 WL 2085223, at *2-3 (S.D. Iowa Mar. 5, 2018). "The Eighth Circuit has recognized that to impose sanctions for the pre-litigation destruction of evidence there must be a finding of intentional destruction indicating a desire to suppress the truth." *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir. 2012) (internal quotation removed).

at 1006; *see also Stepnes v. Ritschel*, 663 F.3d 952, 965 (8th Cir. 2011) ("Severe spoliation sanctions, such as an adverse inference instruction, are only appropriate upon a showing of bad faith."). Thus, the Court cannot make the requisite finding that Myia "intentionally destroyed evidence after becoming aware of its relevance." *Swindle v. Christy*, 2021 WL 5297047, at *5 (W.D. Mo. Mar. 4, 2021); *Sherman v. Rinchem Co.*, 687 F.3d 996, 1006 (8th Cir. 2012) ("Under Federal law, 'there must be a finding of intentional destruction indicating a desire to suppress the truth.'"); *see also Auer*, 896 F.3d at 858 (recognizing that intentional destruction is a "serious and specific sort of culpability" that must be proven by sufficient evidence).

Because the Court finds the requested sanction unwarranted, it also declines to order Myia to pay LST's attorneys' fees associated with this motion.

Accordingly,

**IT IS HEREBY ORDERED** that LST's Motion for Sanctions against Myia Labs, Inc., Doc. [237], is **DENIED**.

Dated this 31st day of March, 2025.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE